FILED
NOV 15 2000
DAVID W. DANIEL, CLERK
US DISTRICT COURT
E. DIST. N. CAROLINA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:00-CV-179-H-4

| | |
|---|---|
| JOHN E. HAIMBAUGH, SR. & ) <br> ) <br> RITA CATHERINE HAIMBAUGH ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> HOWARD R. BLACKBURN, M.D., ) <br> ) <br> RICHARD H. TARDELL, M.D., & ) <br> ) <br> MEDICAL DOCTOR ASSOCIATES, INC. ) <br> ) <br> Defendants. ) <br> ) | COMPLAINT |

The Plaintiffs John E. Haimbaugh, Sr. (hereinafter "Plaintiff JEH") and Rita Catherine Haimbaugh (hereinafter "Plaintiff RCH") complaining of the Defendants say and allege:

I

This action arises under the Federal Tort Claims Act, 28 USC §§ 2671 et seq., and this Court has jurisdiction under the provisions of 28 USC § 1346(b).

II

Plaintiffs are, and at all times mentioned were, citizens and residents of Craven County, North Carolina, and the cause of action on which this action is based arose in Craven County, North Carolina. Thus, venue is properly laid in this Court.

III

A. Plaintiffs allege negligent acts by agents and employees of the United States of America, which negligence caused or contributed to the injury and resulting damages alleged herein. The Cherry Point Naval Hospital is a United States owned and operated medical facility located aboard the United States Marine Corps Air Station at Cherry Point, North Carolina and operated and staffed by employees and agents of the United States of America. Defendant United States is liable under the Tort Claims Act for the negligent acts of its employees and agents acting within the course and scope of their employment with the United States. The United States of America may be served by serving a copy of the Summons and Complaint on the United States Attorney, 310 New Bern Avenue, Suite 800, Raleigh, NC 27601, and by sending a copy of the Summons and Complaint by registered mail to Janet Reno, Attorney General of the United States, Washington, D.C.

B. Upon information and belief, Defendant Howard R. Blackburn, M.D. (hereinafter "Defendant Blackburn") either was a contract physician serving as a radiologist for and at the Cherry Point Naval Hospital, Craven County, North Carolina or, in the alternative, was a U. S. Government employee serving as a radiologist for and at the Cherry Point Naval Hospital, Craven County, North Carolina, at least during the period of May and November, 1997 and January, 1998. At all times referenced

herein Defendant Blackburn either was acting within the course and scope of his contractual obligations or in the alternative was acting within the authority or apparent authority as a United States agent and/or employee.

C. Upon information and belief, Defendant Richard H. Tardell, M.D. (hereinafter "Defendant Tardell") either was a contract physician serving as a medical doctor for and at the Cherry Point Naval Hospital, Craven County, North Carolina or, in the alternative, was a United States Government employee serving as a medical doctor for and at the Cherry Point Naval Hospital, Craven County, North Carolina on or about March, 1995. At all times referenced herein Defendant Tardell either was acting within the course and scope of his contractual obligations or in the alternative was acting within the authority or apparent authority as a United States agent and/or employee.

D. Upon information and belief, Defendant Medical Doctor Associates, Inc. (hereinafter "Defendant Associates") is a registered Georgia corporation which hired Defendant Blackburn and perhaps Defendant Tardell. Upon information and belief, Defendant Associates and Defendant Blackburn were serving aboard the Cherry Point Naval Hospital during the relevant dates pursuant to and under the terms and conditions of contract number N00140-96-C-N131 by and between Defendant Associates and

the United States Government effective August 31, 1995 and subsequent renewals thereof, thereafter.

IV

Plaintiffs filed claims dated November 23, 1999 pursuant to the pre-suit requirements of the Federal Torts Claim Act, which claims were served on the Department of Navy and the Department of Defense on November 24, 1999. Service upon the Secretary of Defense and Secretary of Navy were perfected at 10:27 a.m. on November 24, 1999 with delivery accepted by D. Trevino. Copies of Plaintiffs' claims are attached as Exhibits 1 & 2, and are incorporated herein by this reference.

V

The filing of Plaintiffs' claims were made more than six months before this action was instituted. Defendant United States of America has failed to make a final disposition of the claim within that time. Plaintiffs deem such failure to be a denial of the claim.

VI

Plaintiffs' claims are for medical malpractice and related torts. The medical malpractice arises from the failure of independent contractors, Navy Hospital personnel, including Navy and/or contract radiologists and other medical doctors, emergency room physicians, technical persons and other hospital employees under the control of the United States of America to properly diagnose and treat a non-small cell carcinoma lesion on

Plaintiff JEH's right lung, which evidence was discovered, or should have been discovered through various x-ray examinations beginning in 1995, especially those examinations occurring in 1997. Specifically:

A. On March 11, 1995, Plaintiff JEH was seen as an outpatient at the Cherry Point Naval Hospital for shortness of breath and wheezing. As a result, x-ray examination of Plaintiff JEH was ordered by Defendant Tardell and carried out by or under the supervision of Cherry Point Radiology Department. The Radiological Examination Report (exam #: 95018079) noted: "Result Code: ABNORMALITY, ATTN. NEEDED" and reported "There is a small area of ill defined increased density in the right midlung on the frontal projection which is not clearly seen on the lateral projection but may project anteriorly in the retrosternal clear space. The density is approximately 15 mm in diameter without defined margins. This may represent a site of atelectasis, developing infiltrate or underlying pulmonary nodule . . . ." The Radiologic Examination Report concluded with "IMPRESSION: Small focus of poorly circumscribed increased density projecting in the right upper lobe anteriorly may represent developing infiltrate, atelectasis, or underlying lung nodule. This is unlikely to represent a summation shadow as it is clearly seen on two different chest radiographs. A follow up chest x-ray is recommended to assess for interval change that will better

characterize the significance of this finding. If this area of abnormal density does not completely resolve, CT examination of the chest will be required to better characterize the significance of this finding." Neither Defendant Tardell nor the Cherry Point Naval Hospital (including its physician and other employees) informed Plaintiffs or further investigated the findings reported by the Radiologic Examination Report of the March 11, 1995 x-ray examination.

B. Between March 11, 1995 and December 10, 1995 Plaintiff JEH reported repeatedly to the Cherry Point Naval Hospital complaining of difficulty of breathing, pain in chest, and extreme shortness of breath. Cherry Point Naval Hospital staff and physicians ordered radiological examinations to rule out pneumonia, asthma exacerbation and COPD. None of the physician requests or prescriptions for radiological examinations ordered follow-up investigation of the March 11, 1995 findings, and, upon information and belief, none of the post March 11, 1995 examination reports address the area of increased density described as an abnormality which needed attention in the March 11, 1995 examination (exam #: 95018079).

C. On May 2, 1997, Plaintiff JEH reported to Cherry Point Naval Hospital with chest problems. Dr. Gerald L. London ordered a radiological examination on the basis of his diagnosis of COPD and to rule out pneumonia. The radiological examination was conducted under the supervision of Defendant Blackburn and

6
Case 4:00-cv-00179-H   Document 1   Filed 11/15/00   Page 6 of 19

the radiological examination was interpreted and approved by Defendant Blackburn. The radiologic film clearly showed the existence of a distinct lesion overlying the right 4th anterior interspace. However, Defendant Blackburn failed to identify, report, or document the lesion. This is evidenced by Defendant Blackburn's Radiologic Examination Report of his examination dated May 2, 1997 which failed to identify/note the lesion which has subsequently been determined to be a non-small cell carcinoma. Since May, 1997, if not before, the non-small cell carcinoma has metastasized and spread to other organs of Plaintiff JEH's body, including his brain. No action was taken by Cherry Point Naval Hospital, by its physicians, nor by Defendant Blackburn to identify, investigate, and treat the lesion clearly evident on the May 2, 1997 films. Nor was any notice given to Plaintiffs of the results of the May 2, 1997 examination.

D. On November 25, 1997 Plaintiff JEH appeared at the Cherry Point Naval Hospital for an annual physical by Dr. Harry T. Williams, an employee and agent of Defendant United States. While reviewing Plaintiff JEH's past medical records, Dr. Harry Williams discovered the Radiological Examination Report of the March 11, 1995 x-ray examination (exam #: 95018079). Upon inquiry as to whether or not any action had been taken as requested by Dr. Ivan Peacock, M.D., Plaintiff JEH indicated that he had never been asked to undergo further examination and

never been notified of the results of the March 11, 1995 examination (exam #: 95018079). Dr. Williams ordered immediate radiologic x-ray examinations, which were conducted by Defendant Blackburn on November 25, 1997. Dr. Williams also ordered a CT Scan which was carried out at the Craven Regional Medical Center on November 28, 1997. Defendant Blackburn transcribed his interpretation of the November 25, 1997 x-ray film on November 26, 1997 in which he reported seeing on the x-ray film " . . . a quite well defined, dense, nodular, metastasis apparently in the upper outer quadrant of the right hemithorax which appears to be probably in the basilar portion of the right upper lobe fairly far back on the lateral view. We have reviewed a portable chest almost a year ago which shows this lesion to [sic] fairly faint. It is superimposed over the lower tip of the scapula and therefore was overlooked. The film made two years ago does not show this lesion, so it has occurred within the last twelve month [sic]. With the patient's history, I believe that he should have a complete lung scan and possibly an abdominal CT scan to rule out tumors of the kidneys or other organs of the abdomen which might produce a dense nodular metastasis." Defendant Blackburn summarized his report with the following: "IMPRESSION: Probable metastatic lesion of the right upper lobe measuring 2-1/2 cm in greatest diameter. Primary or metastatic lung cancer cannot be ruled out. This does not have the usual appearance of pulmonary tuberculosis." The CT Scan conducted on

November 28, 1997 at the Craven Regional Medical Center reported its impression as follows: "IMPRESSION:

1. 2 CM MASS IS SEEN WITHIN THE PERIPHERY OF THE RIGHT UPPER LOBE HIGHLY SUSPICIOUS FOR MALIGNANCY. THERE IS NO EVIDENCE OF LYMPH ADENOPATHY.

2. FINDINGS CONSISTENT WITH MORGAGNI HERNIA.

Upon information and belief, the Craven Regional Medical Center report of Radiologic Consultation was faxed to Dr. Harry T. Williams, who was the physician who discovered the March 11, 1995 Radiologic Examination Report (exam #: 95018079) and who ordered the November 25, 1997 and November 28, 1997 follow-up examinations. However, neither Defendant Blackburn nor Dr. Williams took any action to notify Plaintiffs of the findings nor did they take any action to further investigate or treat the deadly malignancy which was clearly evident but missed earlier although diagnosed by two separate examinations in November, 1997.

E. Finally, on January 14, 1998, Plaintiff JEH was ordered for a radiological examination for possible cardiac disease at Cherry Point Naval Hospital. Following the radiological examination, Defendant Blackburn *again* discovered the metastasized cancer in plaintiff's lung, compared the January 14, 1998 film to the previous examinations of 1997 and noted " . . . that the round, quite well-defined metastatic nodule in the right upper lateral lung field has increased in size by 1 cm in

less than one year. I believe that this definitely should be removed for a more accurate diagnosis of the lesion. It certainly has the appearance of a metastatic nodule which is progressing in growth rather rapidly." Defendant Blackburn's "IMPRESSION" reads as follows: "Rapid growth of a nodule suggesting a metastatic focus in the suprabasilar segment of the right lower lobe which needs surgical attention to rule out malignancy."

Subsequent biopsies, surgical procedures, CT examinations and x-ray examinations have confirmed that lesions identified in the earlier radiological films, particularly the well defined lesions appearing from and after May 2, 1997, were non-small cell carcinoma tumors, which had by January, 1998 metastasized and spread incurably throughout Plaintiff JEH's lungs and other parts of his body.

F. At no time prior to January 14, 1998 was Plaintiff JEH informed of any suspicion of cancer nor was he warned to seek further diagnostic tests or a treatment regimen for cancer.

On February 16, 1998, Plaintiff JEH was admitted to Craven Regional Medical Center and underwent a right thoracotomy with right upper lobectomy. Pathology revealed a poorly diffused adenocarcinoma with clear cell features. Plaintiff JEH was discharged from Craven Regional Medical Center on February 26, 1998.

G.  <u>Amazingly</u>, on June 18, 1998 Plaintiff JEH again entrusted his care to the United States of America by returning to Dr. Harry T. Williams and Defendant Blackburn for a follow-up radiological examination following his upper lobectomy secondary to non-small cell carcinoma.  Once again, Defendant Blackburn reported on the Radiologic Examination Report for exam #: 98035481 that the result of the radiological examination was "NEGATIVE".  The Radiologic Examination Report included "IMPRESSION: Normal PA and lateral chest."  <u>However</u>, when Plaintiff JEH returned for a follow-up examination on September 26, 1998, reporting difficulty in breathing and after another Defendant Blackburn radiological examination, Defendant Blackburn again reported that he had missed the radiological finding on the June 18, 1998 Radiologic Examination Report.  The September 26 Radiologic Examination Report (exam #: 98061585) had the following Result Code: "ABNORMALITY, ATTN. NEEDED." Defendant Blackburn admitted within the Report the following: "A study made 18 June 1998 showed a 1 cm nodule which is actually superimposed on the heart and is seen only on the lateral projection.  At the present time, this nodule has grown at least 0.5 cm in diameter since 18 June 1998."

H.  Warnings of abnormality and the need for further attention to the specific areas of Plaintiff JEH's lungs were received and ignored by Cherry Point Naval Hospital, its

employees and/or agents, as early as March 11, 1995. Cherry Point Naval Hospital, armed with that knowledge, failed to notify Plaintiffs, failed to provide the ordered attention and further investigation and treatment, and failed to address the noted abnormality to the detriment of the Plaintiffs.

I.  Upon information and belief, Defendant Tardell and/or other responsible employees/agents of the United States received the Radiologic Examination Report (exam #: 95018079) of the March 11, 1995 radiologic examination and failed to properly warn Plaintiff JEH, failed to provide the attention ordered by the Radiologic Examination Report (exam #: 95018079), and failed to properly and medically address the abnormality discovered and reported in that Radiologic Examination Report to the detriment of the Plaintiffs. In the alternative the United States Government through its employees/agents failed to properly report the Radiologic Examination Report to Defendant Tardell and others, thus preventing the proper reporting, investigation and treatment of Plaintiff JEH.

J.  The United States' failure and Defendant Tardell's failure to report, follow-up, investigate and treat, or cause to be treated, the discovered abnormality discovered on March 11, 1995 clearly falls below the acceptable standard of care of medical practice within Craven County and eastern North Carolina.

K. On or about May 2, 1997 Defendant Blackburn failed to properly interpret the radiological examination of Plaintiff JEH as misreported on the Radiologic Examination Report (exam #: 97027736). Defendant Blackburn also failed to report lesions clearly evident on the May 2, 1997 x-ray film. The failure to properly interpret and the failure to properly report the May 2, 1997 lesion falls well below the acceptable standard of care of medical practice for radiologists within the eastern North Carolina and Craven County areas.

L. Following the November 25, 1997 radiologic examination by Defendant Blackburn and the November 28, 1997 radiological examination conducted by Craven Regional Medical Center, the United States Government, including Dr. Harry T. Williams, and Defendant Blackburn failed to notify Plaintiff JEH and further failed to carry out the required and necessary medical intervention to protect the health and save the life of Plaintiff JEH. Such conduct falls well below the acceptable standard of care of medical practice for radiologists, medical doctors and medical care facilities within the eastern North Carolina and the Craven County areas.

M. The failure of Defendant Blackburn and Defendant United States of America to properly identify, give notice and treat Plaintiff JEH during and after the June 18, 1998 radiological examination (exam #: 98035481), having previously and continuously misdiagnosed Plaintiff JEH's dire condition, is

totally inexcusable, unconscionable and falls below the standard of care of any radiological and medical standard in any jurisdiction anywhere.

N. At all times referenced herein Dr. Harry T. Williams was operating within the course and scope of his employment with an agency of Defendant United States of America, and Defendants Blackburn and Tardell either were: 1. Contract doctors serving Defendant United States of America through employment contracts with independent contractors such as Defendant Associates; or, 2. Agents and employees of Defendant United States of America. Defendant Associates is liable for all acts of negligence of its employees, agents, and/or contract physicians and other employees described by action or failure to act through this notice pleading. The negligence described herein may have also included the negligence of other employees and agents of Defendant United States of America and/or Defendant Associates.

O. In the alternative, and upon information and belief, the failure of the notice, reporting, investigative and treatment processes may have been the responsibility of and the negligent performance of duties of other employees of the United States Government.

## VII

As a result of the negligence of the individually named Defendants and the agents and employees of the United States, Plaintiffs have suffered personal injuries as follows: Plaintiff

JEH has contracted, and without proper discovery and treatment, suffers from an incurable and deadly disease, which will soon take his life. As a result of the defendants' negligence, plaintiff JEH has had to undergo massive surgery, endure continuous and unbearable pain and suffering and be submitted to continuous medical treatments, including those listed and described in Plaintiff JEH's submissions to the United States of America dated November 23, 1999 and February 23, 2000. The Plaintiff JEH unnecessarily experiences multiple painful, debilitating, deadly metastasized cancer growth throughout his body. Plaintiff JEH will soon die as a result of Defendants' negligence.

## VIII

Plaintiff RCH is, and at all times relevant herein, married to the Plaintiff JEH. Prior to the injuries sustained by Plaintiff JEH resulting from the negligence of the Defendants, Plaintiffs enjoyed a happy marriage. Plaintiffs enjoyed the love and affection of each other and reasonably anticipated many more years of conjugal happiness. As a direct result of the negligence of the Defendants, Plaintiff JEH was injured as set forth above, and is no longer able to function in a full capacity as a marriage partner of Plaintiff RCH. Plaintiff RCH is, therefore, deprived of Plaintiff JEH's society, companionship, sexual fulfillment and affection.

## IX

This action encompasses a circumstance in which, if Defendant United States of America were a private person, liability would be imposed under the law of the State of North Carolina on physicians, hospitals, and other agents or employees charged with responsibility for medical care and proper recording and transmittal of information pertaining to Plaintiffs. Under the provisions of Title 10 of the United States Code, Section 1098, the exclusive remedy against these agents and employees of Defendant United States is under the Tort Claims Act.

X

By reason of the negligence of Defendants and Defendants' agents and employees, Plaintiffs have suffered damages, including medical expenses, loss of time, pain and suffering, disfigurement, disability, and loss of consortium. Plaintiffs are reasonably likely in the future to incur medical expenses, to lose time from employment, and to endure pain and suffering, disfigurement and disability. Plaintiff JEH also asserts a claim for loss of chance of survival due to the failure to diagnose and treat the Plaintiff JEH's condition at an earlier time.

XI

Pursuant to Rule 9(j) of the North Carolina Rules of Procedure, the radiological medical care from May 2, 1997 through January, 1998 referenced in this complaint has been

reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the radiological care, specifically the radiological care of Defendant Blackburn did not comply with the applicable standard of care. Further, the pleadings allege facts establishing additional medical negligence which are provable under the existing common-law doctrine of res ipsa loquitur requiring no pre-suit Rule 9(j) certification.

X

WHEREFORE, Plaintiffs demand:

1. Judgment against the United States of America and the individually named Defendants in an amount in excess of Three Million ($3,000,000.00) Dollars;

2. Costs of this action; and

3. Such other and further relief as the Court deems proper.

This the 14 day of November, 2000.

_____
JOHN A. J. WARD
ATTORNEY FOR PLAINTIFFS
N.C. STATE BAR NUMBER: 5880
POST OFFICE DRAWER F
NEW BERN, NC 28563
(252) 633-7816

_____
ALFRED D. WARD
ATTORNEY FOR PLAINTIFFS
N.C. STATE BAR NUMBER:  4551
POST OFFICE DRAWER 1428
NEW BERN, NC  28563
(252) 633-1103

VERIFICATION

STATE OF NORTH CAROLINA

COUNTY OF CRAVEN

JOHN E. HAIMBAUGH, SR. and RITA CATHERINE HAIMBAUGH, being first duly sworn, depose and say that they are the Plaintiffs in the foregoing action and that the allegations set forth in the Complaint are true to the best of their knowledge and belief, except for those allegations set forth upon information and belief, and as to those allegations, they believe them to be true.

This the 13 day of November, 2000.

_____
JOHN E. HAIMBAUGH, SR.

_____
RITA CATHERINE HAIMBAUGH

Sworn to and subscribed before me,
This the 13th day of November, 2000.

_____
Notary Public

My Commission Expires: 12-11-2004